## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FILED

NOV - 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
and )
)
WALTER J. STACHNIK, )
INSPECTOR GENERAL OF THE )
SECURITIES AND EXCHANGE COMMISSION, )
100 F. ST., N.E., WASHINGTON, D.C. 20549, )

        Petitioners,

        v.

GARY J. AGUIRRE,
1528 CORCORAN ST., N.W.,
WASHINGTON, D.C. 20009,

        Respondent.

)
)
)
)
)
)
)

CASE NUMBER  1:06MS00485

JUDGE: James Robertson

DECK TYPE: Miscellanous

DATE STAMP: 11/03/2006

## PETITION FOR SUMMARY ENFORCEMENT OF
## ADMINISTRATIVE SUBPOENA DUCES TECUM

1.    The United States of America and Walter J. Stachnik, Inspector General of the Securities

and Exchange Commission ("SEC-OIG") respectfully petition the Court for summary

enforcement of an administrative subpoena duces tecum ("Subpoena") issued by SEC-OIG to

Respondent Gary J. Aguirre ("Mr. Aguirre") pursuant to 5 U.S.C. app. 3 § 6(a)(4) (2000).

Attached to the memorandum in support of this petition are a copy of the Subpoena (Exh. 1), Mr.

Aguirre's response to the Subpoena (Exh. 2), and the Declaration of Mary Beth Sullivan,

Counsel to the Inspector General of the Securities and Exchange Commission (Exh. 3). For the

reasons stated in the accompanying Memorandum of Points and Authorities, Petitioners hereby

move for an order requiring summary enforcement of the Subpoena. As the basis for their

Petition, Petitioners aver as follows:

## **PARTIES**

2.      Petitioners are the United States of America and SEC-OIG.  SEC-OIG was created by the

Inspector General Act of 1978, as amended ("IGA"), as an "independent and objective

unit[]"possessing the power to, <u>inter alia</u>, "conduct and supervise audits and investigations

relating to the programs and operations" of the SEC.  5 U.S.C. app. 3 § 2.  SEC-OIG's address is

100 F. St., N.E., Washington, D.C. 20549.

3.      Respondent Gary J. Aguirre is a private citizen and former attorney and investigator in

the Enforcement Division of the SEC.  Mr. Aguirre lives at 1528 Corcoran St., N.W.,

Washington, D.C.  20009.

## **JURISDICTION AND VENUE**

4.      Because this case arises under Section 6(a)(4) of the Inspector General Act of 1978, as

amended ("IGA"), which authorizes SEC-OIG to issue subpoenas <u>duces tecum,</u> <u>see</u> 5 U.S.C. app.

3 § 6(a)(4), this Court has federal question jurisdiction under 28 U.S.C. § 1331.

5.      The IGA provides that a subpoena issued under the Act "shall be enforceable by order of

any appropriate United States district court."  5 U.S.C. app. 3 § 6(a)(4).  Venue in this district is

appropriate because Mr. Aguirre resides here, and because SEC-OIG served the subpoena upon

Mr. Aguirre at his residence within this jurisdiction.  <u>See</u> 28 U.S.C. § 1391(b).

## STATUTORY PROVISIONS

6.    The IGA authorizes SEC-OIG to "receive and investigate complaints or information from an employee of the [SEC] concerning the possible existence of any activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety." 5 U.S.C. app. 3 § 7(a).  To facilitate such investigations, the IGA grants SEC-OIG "subpoena powers coextensive with that authority." United States v. Aero Mayflower Transit Co., Inc., 831 F.2d 1142, 1145 (D.C. Cir. 1987).  Specifically, SEC-OIG is authorized "to require by subpena [sic] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by [the IGA]." 5 U.S.C. app. 3 § 6(a)(4).  In cases, like the present one, where a party resists such a subpoena, SEC-OIG may seek enforcement in "any appropriate United States district court." Id.

## BACKGROUND

7.    On September 2, 2005, the SEC terminated Gary Aguirre, an attorney and investigator in its Division of Enforcement ("Enforcement"), before the end of his probationary period.  Mr. Aguirre sent two letters to SEC Chairman Christopher Cox, dated September 2, 2005 and October 11, 2005, alleging that Enforcement officials gave a potential insider trading tipper preferential treatment because of the suspected tipper's political connections, then fired Mr. Aguirre for raising concerns about the treatment of the suspected tipper, and retroactively created a negative performance evaluation to justify Mr. Aguirre's termination.  See Sullivan Decl. ¶ 4.

8.      Chairman Cox referred the matter to SEC-OIG, which opened an investigation into Mr.

Aguirre's allegations on October 6, 2005. That investigation found insufficient evidence to

support Mr. Aguirre's allegations. SEC-OIG did not interview Mr. Aguirre as part of this initial

investigation. It concluded that Mr. Aguirre's letters to Chairman Cox outlined his specific

allegations and, therefore, no additional information was needed from him. SEC-OIG closed the

investigation on November 29, 2005. See Sullivan Decl. ¶ 5.

9.      In addition to notifying SEC Chairman Cox, Mr. Aguirre also communicated his

allegations to the Senate and the Office of Special Counsel ("OSC"). After members of the

Senate contacted the SEC with concerns about its inquiry into Mr. Aguirre's complaints,

Chairman Cox requested that SEC-OIG reopen its investigation. SEC-OIG reopened that

investigation on July 6, 2006, and now seeks to obtain the information that Mr. Aguirre possesses

related to his allegations, which provided the impetus for the initial SEC-OIG investigation. See

Sullivan Decl. ¶ 10-12.


### ATTEMPTS TO OBTAIN DOCUMENTS FROM AND EXAMINE RESPONDENT

10.     In a telephone conversation with Mr. Aguirre's counsel, Joanne Royce, SEC-OIG

requested that Mr. Aguirre consent to an interview and that he produce a copy of the 42-page

sworn statement (and supporting exhibits) he provided to the Senate Committees and OSC. In a

letter dated August 3, 2006, Mr. Aguirre's counsel communicated his refusal to be interviewed

and to turn over the documents. See Sullivan Decl. ¶ 20.

11.     On August 11, 2006, SEC-OIG served Mr. Aguirre with a subpoena duces tecum (Exh.

1), requesting:

(1) A copy of the sworn statement and all exhibits that Mr. Aguirre previously provided to the Office of Special Counsel and the Senate Banking Committee.

(2) All other documents, including e-mails, that Mr. Aguirre provided to the Office of Special Counsel, the Senate Banking Committee, the Senate Finance Committee or the Senate Judiciary Committee.

(3) All documents, including e-mails, that support, refer or relate in any way to the allegations made in Mr. Aguirre's September 2, 2005 and October 11, 2005 letters to Securities and Exchange Commission Chairman Christopher Cox.

(4) All documents, including emails, that support, refer, or relate in any way to the six specific allegations outlined in the subpoena.

12.    On September 15, 2006, Mr. Aguirre notified SEC-OIG that he did not intend to comply with the August 11, 2006 subpoena (Exh. 2), and, in fact, he has refused to comply up to and including the date of filing of the instant Petition.  See Sullivan Decl. ¶ 23.

13.    SEC-OIG issued the Subpoena duces tecum to Respondent for a lawful purpose within its statutory authority under the IGA.  The Subpoena seeks documents directly relevant to the aforementioned investigation, which Mr. Aguirre is now impeding.  Because Mr. Aguirre refuses to be interviewed, SEC-OIG cannot move forward with its investigation of Mr. Aguirre's complaints unless this Court orders him to turn over the sworn statement and supporting evidence.

14.    This document request is not unduly burdensome, because it merely seeks to obtain copies of information Mr. Aguirre already compiled for the Senate Committees and OSC.

## RELIEF REQUESTED

WHEREFORE, Petitioners respectfully request this Court:

A.    To issue the accompanying Order to Show Cause requiring Mr. Aguirre to appear

and show cause why the Court should not grant this petition and the relief requested herein;

B.     Upon the return of said Order to Show Cause, adjudge that Mr. Aguirre be compelled by this Court to produce such documents as are identified in the Subpoena.

C.     Grant such other and further relief as may be appropriate to effect compliance with the Subpoena.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

_Michael P. Abate_

ARTHUR R. GOLDBERG, D.C. Bar 180661
MICHAEL P. ABATE, Ill. Bar 6285597
Attorneys, Department of Justice
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20530
Tel: (202) 616-8209
Fax: (202) 616-8470

E-mail: michael.abate@usdoj.gov

Attorneys for Petitioners

OF COUNSEL:
MARY BETH SULLIVAN
KELLY ANDREWS
SEC-Office of Inspector General
100 F. St. N.E.
Washington, D.C. 20549
Tel: (202) 551-6038

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, a copy of Petitioners' Petition for Summary Enforcement of Administrative Subpoena Duces Tecum, supporting memorandum, Motion for Order to Show Cause, and Proposed Order to Show Cause were sent by first class mail, postage prepaid, to:

Scott A. Hodes
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C. 20015

Joanne Royce
Government Accountability Project
1612 K St. N.W., Suite 1100
Washington, D.C. 20006

Gary J. Aguirre
1528 Corcoran St., N.W.
Washington, D.C. 20009


MICHAEL P. ABATE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>and )<br><br>WALTER J. STACHNIK, )<br>INSPECTOR GENERAL OF THE )<br>SECURITIES AND EXCHANGE COMMISSION )<br><br>      Petitioners, )<br><br>      v. )<br><br>GARY J. AGUIRRE )<br><br>      Respondent. )  | Misc. No. _____ |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA DUCES TECUM

Petitioners United States of America and Walter J. Stachnik, Inspector General of the Securities and Exchange Commission, respectfully submit this memorandum of points and authorities in support of their petition for summary enforcement of an administrative subpoena duces tecum issued in connection with an investigation into allegations made by Respondent Gary J. Aguirre concerning the handling of an insider trading investigation while he was employed by the SEC, and his termination from that agency, pursuant to its subpoena powers under 5 U.S.C. app. 3 § 6(a)(4).

## INTRODUCTION

The Court should summarily enforce the administrative subpoena <u>duces tecum</u> ("Subpoena") issued to Gary J. Aguirre ("Mr. Aguirre"). An administrative subpoena is enforceable as long as (1) the subpoena was issued for a lawful purpose within the statutory authority of the agency that issued it; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome. <u>United States v. Hunton & Williams</u>, 952 F.Supp. 843, 848 (D.D.C. 1997). Because all of these factors are met here, this Court should enforce the Subpoena.

## STATUTORY BACKGROUND

Congress enacted the Inspector General Act of 1978 ("IGA"), 5 U.S.C. app. 3 § 1 <u>et seq.</u> (2000), to combat "fraud, abuse, and waste in the operations of Federal departments and agencies." <u>United States v. Aero Mayflower Transit Corp.</u>, 831 F.2d 1142, 1145 (D.C. Cir. 1987) (quoting legislative history). That Act created an independent Office of the Inspector General within numerous federal agencies, including the Securities and Exchange Commission ("SEC-OIG"). <u>See</u> 5 U.S.C. app. 3 §§ 8G(a)(2), 8G(b).[1] Under the IGA, SEC-OIG possesses the power to, <u>inter alia,</u> "receive and investigate complaints or information from an employee of the [designated Federal entity] concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety." <u>Id.</u> § 7(a). To

---

[1] The SEC is a "designated Federal entity" under the IGA. <u>See</u> 5 U.S.C. app. 3 §§ 8G(a)(2). Section 8G(b) of the IGA created a separate OIG in each "designated Federal entity" and granted that OIG the powers set out in sections 4, 5, 6, and 7 of the Act. <u>See id.</u> § 8G(g)(1).

facilitate this investigatory authority, the IGA gives inspectors general broad subpoena power "coexistent with that [investigative] authority." Aero Mayflower Transit Corp., 831 F.2d at 1145. SEC-OIG may "require by subpena [sic] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act." 5 U.S.C. app. 3 § 6(a)(4). "[I]n the case of contumacy or refusal to obey" the subpoena – as Mr. Aguirre has demonstrated – that subpoena "shall be enforceable by order of any appropriate United States district court." Id.

## STATEMENT OF FACTS

In September 2005, the Securities and Exchange Commission terminated the employment of Gary J. Aguirre, an attorney in its Enforcement Division, before the end of his probationary period. On September 2, 2005 and October 11, 2005, Mr. Aguirre sent letters to SEC Chairman Christopher Cox alleging that a potential target in a large insider trading investigation received favorable treatment due to that suspected tipper's political influence, that the SEC terminated Mr. Aguirre for complaining to his supervisors about the way the potential tipper was treated, and that SEC employees retroactively created a negative performance evaluation to justify Mr. Aguirre's termination. See Sullivan Decl. ¶ 4. Chairman Cox referred the matter to SEC-OIG, which initiated an investigation on October 6, 2005. That investigation concluded that the evidence did not support Mr. Aguirre's allegations. See id. ¶ 5. SEC-OIG did not interview Mr. Aguirre at the time because it concluded his letters contained sufficiently detailed accusations of wrongdoing. Id. SEC-OIG closed its initial investigation on November 29, 2005. Id.

SEC-OIG subsequently received inquiries about Mr. Aguirre's allegations from several

Senate Committees. Id. ¶ 6-7. Mr. Aguirre provided these Committees with a 42-page sworn statement, accompanied by 46 exhibits, detailing his allegations against the SEC. Id. ¶ 8. Additionally, Mr. Aguirre testified at a Senate Judiciary Committee hearing, where he lodged a new allegation – specifically, that the insider trading investigation he worked on was prematurely terminated for political reasons. Id. ¶ 9.

In light of the Senate inquiries and Mr. Aguirre's new allegations, SEC Chairman Christopher Cox requested that SEC-OIG reopen its investigation into Mr. Aguirre's complaints. Id. ¶ 10. SEC -OIG reopened the investigation on July 6, 2006. Id. ¶ 11. As part of that reopened investigation, SEC-OIG attorneys requested that Mr. Aguirre consent to an interview and that he produce a copy of the sworn statement he provided to the Senate Committees. Id. ¶ 16-19. In a letter from his counsel dated August 3, 2006, Mr. Aguirre refused SEC-OIG's request. Id. ¶ 20.

SEC-OIG then served Mr. Aguirre with the Subpoena on August 11, 2006. Id. ¶ 21. That Subpoena requested four categories of documents, including:

> (1) A copy of the sworn statement and all exhibits that Aguirre previously provided to the Office of Special Counsel and the Senate Banking Committee.

> (2) All other documents, including e-mails, that Aguirre provided to the Office of Special Counsel, the Senate Banking Committee, the Senate Finance Committee or the Senate Judiciary Committee.

> (3) All documents, including e-mails, that support, refer or relate in any way to the allegations made in Aguirre's September 2, 2005 and October 11, 2005 letters to Securities and Exchange Commission Chairman Christopher Cox.

> (4) All documents, including emails, that support, refer, or relate in any way to six specific allegations that are outlined in the subpoena.

See Exh. 1.

-4-

Mr. Aguirre formally responded to the Subpoena on September 15, 2006, notifying SEC-OIG that he did not intend to comply. See Exh. 2; Sullivan Decl. ¶ 23. Mr. Aguirre maintains that the investigation is being conducted for an improper purpose, that the documents sought are not relevant to the investigation, that the documents are already in the SEC's control, that the SEC has failed to take the "required administrative steps," and that the documents sought are privileged. See Exh. 2. None of these arguments have merit.

## ARGUMENT

"It is well established that a court is compelled to enforce an administrative subpoena, if the court concludes that: (1) the subpoena was issued for a lawful purpose within the statutory authority of the agency that issued it; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome." Hunton & Williams, 952 F.Supp. 843, 848 (D.D.C. 1997); see also Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943); Resolution Trust Corp. v. Walde, 18 F.3d 943, 946 (D.C. Cir. 1994); Linde Thompson Langworth Kohn & Van Dyke, P.C. v. Resolution Trust Co., 5 F.3d 1508, 1513 (D.C. Cir. 1993); FTC v. Invention Submission Corp., 965 F.2d 1086, 1089 (D.C. Cir. 1992); Aero Mayflower Transit Co., 831 F.2d at 1145; Resolution Trust Co. v. American Cas. Co., 787 F.Supp. 5, 7 (D.D.C. 1992). A court's role in enforcing an administrative subpoena "is a strictly limited one." FTC v. Texaco, Inc., 555 F.2d 862, 817-72 (D.C. Cir. 1977) (en banc). So long as the three aforementioned criteria are met, an agency has "a right to judicial enforcement of the subpoena[]." Id. at 872 (citing Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209 (1946)). The Subpoena in this case meets the three requirements for summary enforcement.

I.    SEC-OIG's Investigation Has a Lawful Purpose.

"The question of whether the subpoena was issued for a lawful purpose turns on whether

the [SEC-OIG] possessed the requisite statutory authority to investigate" Aguirre's allegations.

Hunton & Williams, 952 F. Supp. at 848. The authority to conduct this investigation could not

be more clear; the IGA provides that the "Inspector General may receive and investigate

complaints or information from an employee . . . concerning the possible existence of activity

constituting . . . abuse of authority." 5 U.S.C. app. 3 § 7(a). The IGA also provides that SEC-

OIG shall have subpoena powers coextensive with its investigatory authority. See id. § 6(a)(4).

This Subpoena falls squarely within that clear statutory authority.

Despite the fact that Mr. Aguirre himself gave SEC-OIG the lawful investigative purpose

by writing letters to Chairman Cox, he maintains that SEC-OIG's investigation is improper. Mr.

Aguirre offers nothing but naked assertions that SEC-OIG's investigation is intended to

"whitewash the improper conduct of senior SEC officials now under investigation by the OSC

and two Senate Committees," to "frustrate the OSC investigation," and to "harass Mr. Aguirre

for having exercised his constitutional right of free speech." See Exh. 2. These unsubstantiated

assertions are insufficient to meet Mr. Aguirre's "heavy burden" of proving the Subpoena was

issued in "bad faith." In re Administrative Subpoena, 289 F.3d 843, 846 (6th Cir. 2001) (mere

allegations of bad faith were insufficient to prevent enforcement of subpoena) (internal quotation

marks omitted); see also United States v. Powell, 379 U.S. 48, 58 (1964) (burden of showing

abuse of process is on party challenging administrative subpoena). "[B]ad faith cannot be proved

simply by showing that an individual agency employee may have acted with improper motives.

Instead, it must be shown that the agency, in an institutional sense, acted in bad faith when it

issued the subpoena." In re Adminstrative Subpoena, 289 F.3d at 846 (internal citation omitted).

Moreover, even if Mr. Aguirre could satisfy this substantial burden of demonstrating that

the SEC-OIG, *in an institutional sense*, is attempting to harass him, SEC-OIG would still be

entitled to subpoena enforcement. "[E]ven if an improper purpose by an agency or member of

the staff is shown, enforcement of the subpoena is called for so long as proper purposes exist as

well." FTC v. Carter, 636 F.2d 781, 789 (D.C. Cir.1980) (citing Donaldson v. United States, 400

U.S. 517, 534-35 (1971)). Therefore, because § 7(a) of the IGA gives SEC-OIG the power to

investigate Mr. Aguirre's complaints, SEC-OIG is entitled to enforcement of the Subpoena even

if Mr. Aguirre could prove his baseless claims of bad faith.[2]

## II.    The Documents Sought are Relevant to the Investigation

For summary enforcement of the Subpoena to be proper, the items sought need only be

"reasonably relevant," meaning "merely that the information must be relevant to *some* (any)

inquiry that the [agency] is authorized to undertake." Hunton & Williams, 952 F. Supp. at 854

---

[2] Mr. Aguirre's other arguments concerning the legitimate purpose of the investigation are simply irrelevant. SEC-OIG's statutory authority to investigate his accusations is in no way affected by the facts that"[t]he same people who conducted the first OIG investigation are now conducting the reopened investigation," that "[t]he decision to reopen the investigation was made only a few days before [Chairman] Cox was called to testify before the Senate Banking Committee," and that "[t]he OIG has offered no explanation for why it did not contact Mr. Aguirre in connection with the first investigation." See Exh. 2.

Finally, Mr. Aguirre misrepresents the law governing release of information contained in the complaint he filed with the Office of Special Counsel. The fact that his sworn statement was part of his OSC complaint does not mean that *he* cannot turn it over to the SEC; 5 U.S.C. § 1213(g)(2) would only prevent *OSC* from turning over Mr. Aguirre's complaint without his consent.

(citation omitted); see also United States v. Aero-Mayflower Transit Co., 646 F. Supp. 1467, 1472 (D.D.C. 1986) ("An agency need show only that the investigation is within the scope of its authority and that the requested documents are minimally relevant to that inquiry."). In an administrative proceeding, the standard for judging relevancy "is more relaxed that in an adjudicatory one." Invention Submission Corp., 965 F.2d at 1090. The requested material "need only be relevant to the *investigation* – the boundary of which may be defined quite generally." Id. And where, as here, "the dispute turns on the *relevance* of the information sought by a government agency . . . the district court should not reject the agency's position unless it is 'obviously wrong.'" Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (quoting Invention Submission Corp., 965 F.2d at 1089); Hunton & Williams, 952 F. Supp. at 854.

　　　As with allegations of bad faith, Mr. Aguirre bears the burden of showing that the agency's determination of relevance is "obviously wrong." See Vinson & Elkins, LLP, 124 F.3d at 1307. He cannot make such a showing in this case. The subpoena seeks to obtain (1) a 42-page statement (with exhibits) that represents Mr. Aguirre's version of the facts surrounding the PCM investigation and his subsequent termination, (2) other documents Mr. Aguirre gave to the Senate committees investigating this matter, and (3) any evidence related to allegations Mr. Aguirre made against the SEC. This evidence is directly relevant to SEC-OIG's investigation of Mr. Aguirre's complaints.

III.　　The Subpoena Demand is Reasonable and Not Unduly Burdensome

　　　SEC-OIG merely seeks to complete its investigation into complaints made by Mr.

Aguirre. Because he initially criticized SEC-OIG for failing to interview him, see Exh. 2, Mr.

Aguirre cannot now claim that SEC-OIG's attempt to get the written statement, along with those

documents on which he relies to support his claims concerning the previous investigations, is

unreasonable. Indeed, it is Mr. Aguirre's attempt to block the SEC-OIG's effort, and not the

SEC-OIG's Subpoena, that is unreasonable.

Nor does SEC-OIG's request place an undue burden upon Mr. Aguirre. SEC-OIG seeks

only to obtain a copy of the materials that Mr. Aguirre previously turned over to the other entities

investigating his allegations (the Senate Committees and OSC), and any other evidence relevant

to his specific allegations against the SEC and its staff.

IV.    Mr. Aguirre's Other Objections Against Complying Are Meritless.

Although this Subpoena clearly satisfies the three-part test for enforcement of an

administrative subpoena, Mr. Aguirre maintains that there are other reasons why he should not

have to comply with SEC-OIG's document request. See Exh. 2. These arguments all miss the

mark.

First, Mr. Aguirre asserts that United States v. Powell, 379 U.S. 48 (1964), justifies his

refusal because it prevents the enforcement of Subpoenas issued for documents already within

the agency's control. He argues that Powell applies here because "[a]ll documents in Mr.

Aguirre's possession are currently in the possession of the SEC." This assertion is patently false

in at least one important respect: the SEC does not have a copy of Mr. Aguirre's 42-page sworn

statement or any of the other materials he prepared specially for the Senate Committees. See

Sullivan Decl. ¶ 26. Moreover, because Mr. Aguirre refuses to disclose what supporting

-9-

documents he appended to that statement, it is impossible for SEC-OIG – and this Court – to

know whether the SEC possesses any of the requested documents. Additionally, due to technical

problems, SEC-OIG is unable to obtain all of the e-mails relevant to the insider trading

investigation – including an entire month's worth of e-mails from Mr. Aguirre's account. <u>See</u>

Sullivan Decl. ¶ 27.

Second, Mr. Aguirre asserts that the SEC has not taken the "required administrative

steps," as *Powell* commands. This objection distorts both the law and the facts of this case. The

"required steps" at issue in <u>Powell</u> were required only because that case arose under the Internal

Revenue Code, which prescribes special procedures for issuing subpoenas in tax cases. <u>See</u> 379

U.S. at 57-58. Those "steps" are irrelevant to SEC-OIG's subpoena power, which arises under

the IGA. Moreover, the reason Mr. Aguirre gives for alleging SEC-OIG has not followed the

proper "steps" is frivolous. He claims that "OIG has also been investigating Mr. Aguirre." <u>See</u>

Exh. 2. Even if this assertion were true, it would have nothing to do with the proper procedures

for issuing a subpoena.

Finally, Mr. Aguirre alleges that the documents sought are "privileged, e.g., attorney-

client communications." This argument, too, must fail. The primary documents sought by the

SEC-OIG are those that Mr. Aguirre already shared with the Senate and the OSC. Even if any of

those documents might have been privileged at some point – and he offers no evidence that they

were – the fact that he shared them with these third parties would strip the documents of any

privilege. <u>See</u> <u>In re Sealed Case,</u> 676 F.2d 793, 809 (D.C. Cir. 1982) ("[A]ny voluntary

disclosure by the client to a third party breaches the confidentiality of the attorney-client

relationship and therefore waives the privilege, not only as to the specific communication

-10-

disclosed but often as to all other communications relating to the same subject matter.").

## **CONCLUSION**

SEC-OIG, as part of its lawful investigation into Mr. Aguirre's allegations, issued a

Subpoena for documents directly relevant to that inquiry. This request was neither unreasonable

nor unduly burdensome. This Court therefore should order summary enforcement of the

Subpoena.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

*Michael P. Abate*

OF COUNSEL:
MARY BETH SULLIVAN
KELLY ANDREWS
SEC-Office of Inspector General
100 F. St., N.E.
Washington, D.C. 20549
Tel: (202) 551-6038

ARTHUR R. GOLDBERG, D.C. Bar 180661
MICHAEL P. ABATE, Ill. Bar 6285597
Attorneys, Department of Justice
20 Mass. Ave., N.W., Room 7302
Washington, D.C. 20530
Tel: (202) 616-8209
Fax: (202) 616-8470

E-mail: michael.abate@usdoj.gov

Attorneys for Petitioners

-11-

# Exhibit 1



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF THE
INSPECTOR GENERAL

August 11, 2006

Mr. Gary J. Aguirre
1528 Corcoran Street, NW
Washington, DC 20009

Re:    Case OIG-431; Subpoena No. 06-07

Dear Mr. Aguirre:

Pursuant to the Inspector General Act of 1978, as amended, the Inspector General of the
Securities and Exchange Commission has issued the enclosed subpoena *duces tecum*,
which requires you to produce certain records.

No personal appearance pursuant to the subpoena will be required at the time and place
indicated on the subpoena if, on or before the return date indicated on the subpoena, the
required records are delivered or faxed to the undersigned at the following address or
facsimile number:

> U.S. Securities and Exchange Commission
> Office of Inspector General
> 100 F Street, NE
> Washington, D.C. 20549-2736
> Facsimile No. (202) 772-9265

Fully legible and complete copies of the records called for by the subpoena will be
accepted in response to the subpoena provided that the original records will be made
available to employees of the Office of Inspector General, upon request, during normal
working hours. Otherwise, original documents (including copies as maintained in your
files) should be produced.

If for any reason you do not produce any of the records called for by the subpoena, list
and indicate the location of each such record and state the reason for non-production.

This request for information is confidential and should not be construed as an indication by
the Inspector General or his staff that any violation of law has occurred or as a reflection
on any person related to the enclosed subpoena.

Mr. Gary J. Aguirre
August 11, 2006
Page 2

If you have any questions, please call me at (202) 551-6038.  Thank you for your
cooperation.

Sincerely,

Kelly J. Andrews
Associate Counsel to the Inspector General

Enclosures
1.  Subpoena and Attachment
2.  Privacy Act Notice



· No. 06-07

## SUBPOENA DUCES TECUM

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION
### OFFICE OF THE INSPECTOR GENERAL

To:    Gary J. Aguirre
      1528 Corcoran Street, NW
      Washington, DC 20009

YOU ARE HEREBY COMMANDED TO DELIVER the material listed in the Attachment, to Kelly J. Andrews, Associate Counsel to the Inspector General, Office of the Inspector General, 100 F Street, NE, Room 2735, Washington, D.C. 20549-2736, on the 31st day of August 2006, at 10 o'clock a.m., in connection with:

Case OIG-431, an investigation into misconduct, including allegations of preferential treatment, unlawful termination and document tampering, being conducted pursuant to the Inspector General Act of 1978, as amended, 5 U.S.C. App. (Inspector General Act or Act).

This material is necessary to carry out a legitimate law enforcement inquiry under the authority of the Inspector General Act. Under this Act, the Inspector General has the duty and responsibility to conduct and supervise audits and investigations, to promote economy, efficiency and effectiveness in the administration of, and to prevent and detect fraud and abuse in and relating to, the programs and operations of the Securities and Exchange Commission.

IN TESTIMONY WHEREOF, the Undersigned Counsel to the Inspector General of the Securities and Exchange Commission has hereunto set her hand at Washington, D.C., this 11th day of August 2006.

*Mary Beth Sullivan*

MARY BETH SULLIVAN
Counsel to the Inspector General

ATTACHMENT
(Aguirre Subpoena No. 06-07)

DEFINITIONS

As used herein, the following terms have the designated meanings:

1.    "Documents" means all paper writings and electronically or magnetically stored information or data in your possession, custody or control, in whatever form, including but not limited to, diskettes, schedules, lists, agreements, calendars, daytimers, appointment books, address and telephone listings, telephone messages and logbooks, notebooks, diaries, journals, records of oral conversations, correspondence, e-mails, notes and memoranda, including drafts.

2.    "Documents relating to" any given subject means any document that constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including but not limited to, documents that were at any time attached, annexed or appended to or used in the preparation of any document called for by this subpoena.

DOCUMENTS TO BE PRODUCED

1.    A copy of the sworn statement and all exhibits that you previously provided to the Office of Special Counsel and the Senate Banking Committee.

2.    All other documents, including e-mails, that you have provided to the Office of Special Counsel, the Senate Banking Committee, the Senate Finance Committee or the Senate Judiciary Committee.

3.    All documents, including e-mails, that support, refer or relate in any way to the allegations made in your September 2, 2005 and October 11, 2005 letters to Securities and Exchange Commission Chairman Christopher Cox.

4.    All documents, including e-mails, that support, refer or relate in any way to the following allegations, or any similar or related allegations:

a.    That a Division of Enforcement insider trading investigation was abruptly and improperly halted because of outside political influence;

b.    That a potential tipper in the insider trading investigation was given favorable treatment because of that individual's powerful political connections;

c.    That your former supervisors improperly excluded you from meetings about the insider trading investigation;

d.    That outside counsel improperly bypassed normal protocol of contacting the staff attorney and instead went directly to a manager;

e.    That the Division of Enforcement terminated your employment in retaliation for your complaints that the potential tipper was being given favorable treatment; and

f.    That your personnel file was tampered with when one of your former supervisors retroactively created a supplemental negative evaluation of you to justify your termination.

SECURITIES AND EXCHANGE COMMISSION
OFFICE OF INSPECTOR GENERAL

PRIVACY ACT NOTICE
[To accompany subpoena *duces tecum*]

Pursuant to the Privacy Act of 1974, as amended, 5 U.S.C. 552a, you are advised of the following:

1.    Authority for Solicitation of Information. The Inspector General Act of 1978, as amended, 5 U.S.C. App., authorizes the Inspector General of the Securities and Exchange Commission to issue subpoenas necessary in the performance of audits and investigations of programs and operations of the Commission. Disclosure of the information specified in the subpoena is mandatory, subject to the valid assertion of a legal right or privilege.

2.    Principal Purposes for Solicitation of Information. The principal purposes for soliciting the information are to assist the Office of Inspector General in auditing evaluating the Commission's program and operations and investigating possible violations of law, rule or regulation, or other misconduct by Commission staff or contractors.

3.    Routine Uses of the Solicited Information. The routine uses of the solicited information are published in the Federal Register, at 71 FR 31230 (June 1, 2006), and include disclosure:

(1) Where there is an indication of a violation or a potential violation of law, whether civil, criminal or regulatory in nature, whether arising by general statute or particular program statute, or by regulation, rule or order issued pursuant thereto, to the appropriate agency, whether Federal, foreign, state, or local, or to a securities self-regulatory organization, charged with enforcing or implementing the statute, or rule, regulation or order.

(2) To Federal, foreign, state, or local authorities in order to obtain information or records relevant to an Office of Inspector General investigation or inquiry.

(3) To Federal, foreign, state, or local governmental authorities in response to their request in connection with the hiring or retention of an employee, disciplinary or other administrative action concerning an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision in the matter.

(4) To non-governmental parties where those parties may have information the Office of Inspector General seeks to obtain in connection with an investigation or inquiry.

(5) To independent auditors or other private firms or individuals with which the Office of Inspector General has contracted to carry out an independent audit, or provide support for audits, reviews, investigations or other inquiries. These contractors will be required to maintain Privacy Act safeguards with respect to such records.

(6) To respond to subpoenas in any litigation or other proceeding.

(7) To the Department of Justice and/or the Office of the General Counsel of the Commission when the defendant in litigation is: (a) Any component of the Commission or an employee of the Commission in his or her official capacity; (b) the United States where the Commission determines that the claim, if successful, is likely to directly affect the operations of the Commission; or (c) any Commission employee in his or her individual capacity where the Department of Justice and/or the Office of General Counsel of the Commission agree to represent such employee.

(8) To a Congressional office in response to an inquiry from the Congressional office made at the request of an individual bur only from the record of that individual.

(9) To inform complainants, victims, and witnesses of the results of an investigation or inquiry.

(10) To qualified individuals or organizations in connection with the performance of a peer review or other study of the Office of Inspector General's audit or investigative functions.

(11) To a Federal agency responsible for considering debarment or suspension action if the record would be relevant to such action.

(12) To the Department of Justice for the purpose of obtaining its advice on Freedom of Information Act matters.

(13) To the Office of Management and Budget for the purpose of obtaining its advice on Privacy Act matters.

(14) To a public or professional licensing organization if the record indicates, either by itself or in combination with other information, a violation or potential violation of professional standards, or reflects on the moral, educational, or professional qualifications of an individual who is licensed or who is seeking to become licensed.

(15) To the Office of Government Ethics (OGE) to comply with agency reporting requirements established by OGE in 5 CFR part 2638, subpart F.

(16) To the news media and the public when there exists a legitimate public interest (e.g., to provide information on events in the criminal process, such as an indictment).

(17)  To the Integrity Committee of the President's Council of Integrity and Efficiency and the Executive Council on Integrity and Efficiency, another Federal Office of Inspector General, or other Federal law enforcement office, in connection with an investigation, inquiry or review conducted pursuant to Executive Order 12993, or at the request of the SEC Inspector General.

4.    <u>Effect of Noncompliance</u>.  Failure to comply with the subpoena may result in the Inspector General requesting a court order for compliance.  If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court.

Exhibit 2

SCOTT A. HODES, ATTORNEY AT LAW
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

September 15, 2006

Mary Beth Sullivan
Counsel to the Inspector General
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Re: OIG's August 11, 2006, subpoena

Dear Ms. Sullivan:

This responds to your letter of August 11, 2006, and the subpoena of the same date served upon Gary Aguirre ("Aguirre") on August 14, 2006. At this moment, we feel obligated to assert the objections stated below as a formal response to your subpoena.

As you know, Mr. Aguirre informed Chairman Cox on September 2, 2006, that senior SEC officials apparently blocked the testimony of a high profile individual because of his political influence. On his October 11, 2005, letter to Chairman Cox, Mr. Aguirre described how Assistant Director Kreitman had added a putative evaluation to Mr. Aguirre's personnel records more than three weeks after he was terminated. Chairman Cox referred both of these matters to the OIG for investigation. We have very serious concerns how the OIG conducted its investigation of the facts stated in both Mr. Aguirre's letters.

Congress appears to share these concerns. In their August 2, 2006, letter to Chairman Cox, Senator Charles E. Grassley, Chairman of the Senate Finance Committee, and Senator Arlen Specter, Chairman of the Judiciary Committee, articulated some of their concerns as follows:

Despite the SEC's cooperation thus far, many questions regarding the handling of the PCM matter remain unanswered. For example, the quality of the SEC/OIG investigation and the SEC summary memoranda are of particular concern. Both reviews were troubling for numerous reasons, including but not limited to the following:

(1) Mr. Aguirre, the complainant, was never interviewed by either SEC staff or that of the SEC/OIG,

(2) SEC and SEC/OIO staff were seemingly unaware of the existence of certain material documents,

(3) The SEC and SEC/OIG were seemingly unaware of one or more meetings that were material to the investigation, and,

(4) SEC and SEC/OIG accounts of certain events were inconsistent, incomplete, and contradicted by documentary evidence.

– 2 –

Again in his August 21, 2006, letter, Senator Grassley wrote:

> If the SEC were genuinely interested in protecting its Enforcement Division from
> improper political influence, one would have expected its Inspector General to
> conduct a more thorough investigation of Aguirre's allegation that he was prevented
> from taking the testimony of John Mack because of Mack's "political clout."
> Instead, the IG closed its inquiry, claiming it found no evidence that SEC officials
> had referenced Mack's political clout. Contrary to the IG report, however,
> documentary evidence of such statements exists and corroborates Aguirre's claims.

Both Senator Grassley and Senator Specter have also raised concerns about the OIG's
reopening of its investigation. In their August 2, 2006, letter, they wrote Chairman Cox: "Finally, it
has come to our attention that recently, both the SEC and the SEC/OIG have reopened
investigations into this matter. Based upon our review of the SEC/OIG's previous investigation, we
have serious concerns regarding whether SEC/OIG is capable of conducting a re-investigation
worthy of any public confidence."

In addition to the concerns expressed by Senator Grassley and Senator Specter as stated above,
we have additional concerns regarding both the initial and reopened OIG investigations. For all
these reasons, we object to the subpoena on the grounds that (1) it fails to satisfy the requirements
stated in *United States v. Powell*, 379 U.S. 48 (1964) for an enforceable administrative subpoena
and (2) it calls for records subject to various statutory and common law privileges.

In *Powell*, the Court held that an agency must satisfy four requirements before a district court
will enforce an agency's subpoena:

1) the investigation is being conducted pursuant to a legitimate purpose;
2) the information sought is relevant to the inquiry;
3) the information sought is not already within the agency's possession; and
4) the required administrative steps have been followed. (*Id.* at 57-58)

None of these requirements have been satisfied by the OIG in issuing its August 11 subpoena to
Mr. Aguirre.

First, the investigation is not being conducted for a legitimate purpose. (*Id.* 57-58) In addition
to the factors articulated by Senators Grassley and Specter above, we have considered the a
number of factors in reaching this conclusion, including:

1) The OIG is seeking documents which Mr. Aguirre prepared and provided to the Senate
Finance Committee and the Senate Judiciary Committee for the purpose of assisting
those committees with their ongoing investigation of the SEC, e.g., proposed questions
for Senate investigators to ask the SEC officials who are the subject of the Senate's
investigation. We can see no legitimate reason why the OIG would seek those
communications.

– 3 –

2) The OIG is seeking documents which Mr. Aguirre prepared and provided to the Office of Special Counsel ("OSC") in connection with its statutory responsibility to investigate and seek corrective action where a federal agency or its agents have violated 5 USC 2302(b)(8). Said documents may only be released to the agency under investigation when a complainant consents to such release. Mr. Aguirre has not given such consent. The OIG seeks to circumvent that requirement by issuing its subpoena directly to Mr. Aguirre. The OIG's purpose is to obtain such complaint so the SEC can frustrate the OSC investigation.

3) The evidence suggests the OIG conducted its initial investigation to whitewash the improper conduct of senior SEC officials now under investigation by the OSC and two Senate Committees. There is little reason to believe that its purpose has changed. Once again Senator Grassley and Senator Specter had similar concerns. On this point, their August 2 letter reads: "Finally, it has come to our attention that recently, both the SEC and the SEC/OIG have reopened investigations into this matter. Based upon our review of the SEC/OIG previous investigation, we have serious concerns regarding whether SEC/OIG is capable of conducting a re-investigation worthy of any public confidence."

4) The evidence also suggests the OIG investigation is brought to harass Mr. Aguirre for having exercised his constitutional right of free speech and his right to petition the Government for redress of grievances as guaranteed by the First Amendment and to obtain records already in possession of the SEC relating to its decision to give preferential treatment to a high profile individual.

5) The same people who conducted the first OIG investigation are now conducting the reopened investigation.

6) The OIG has offered no explanation why it did not contact Mr. Aguirre in connection with the first investigation.

7) The decision to reopen the investigation was made a few days before Mr. Cox was called to testify before the Senate Banking Committee and on the same day the Division of Enforcement opened its investigation of John Mack.

8) All material documents are currently in the SEC possession and thus easily accessible to the OIG.

Further, many of the documents sought from Mr. Aguirre do not appear relevant to the OIG investigation. (*Id.* 57-58) This would include, for example, the questions Mr. Aguirre prepared and submitted to Senate investigators for their use in questioning senior SEC officials who are the subject of the Senate investigation. These questions are probative of nothing, other than the fact that Mr. Aguirre believes that certain SEC officials should answer those questions.

Further, *Powell* requires that "the information sought is not already within the Agency's possession." (*Id.* 57-58) All documents in Mr. Aguirre's possession are currently in the possession of the SEC.

— 4 —

*Powell* also held the subpoena cannot be enforced unless the agency has taken the "required administrative steps." (*Id.* 57-58). We are aware that the OIG has also been investigating Mr. Aguirre. It appears, therefore, that your subpoena to Mr. Aguirre is an extension of that investigation. Accordingly, it has not been issued for the purposes you stated in the subpoena.

Finally, the subpoena seeks documents which are privileged, e.g., attorney-client communications.

Mr. Aguirre might be willing to voluntary provide evidence and his assistance to a legitimate SEC/OIG investigation of the allegations contained in his two letters to Chairman Cox. Unfortunately, the evidence uniformly suggests otherwise.

Sincerely,

Scott A. Hodes
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C. 20015
(301) 404-0502

Joanne Royce
Government Accountability Project
1612 K Street, NW  Suite 1100
Washington, D.C. 20006
(202) 408-0034  ext. 131

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
and )
)
WALTER J. STACHNIK, )
INSPECTOR GENERAL OF THE )
SECURITIES AND EXCHANGE COMMISSION )
)
      Petitioners, )    Misc. No. _____
)
      v. )
)
GARY J. AGUIRRE )
)
      Respondent )
)

## DECLARATION OF MARY BETH SULLIVAN

I, Mary Beth Sullivan, declare as follows:

1.     I am the Counsel to the Inspector General and the Associate Inspector General for

Investigations in the Office of Inspector General ("OIG") of the U.S. Securities & Exchange

Commission ("SEC"), where I have been employed for approximately the past twelve years. My

current business address is SEC OIG, 100 F Street, N.E., Washington, D.C. 20549.

2.     The OIG was established as an independent unit within the SEC in March 1989,

as required by the Inspector General Act of 1978, as amended. See 5 U.S.C. app. 3 § 8G(a)(2)

(2000). Among other things, the OIG is responsible for conducting internal investigations to

prevent and detect fraud, waste and abuse in the SEC's programs and operations. See id. § 4(a).

These include investigations of complaints from an employee of the agency concerning a

-1-

possible violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse

of authority, or a threat to public safety. See id. § 7(a). The SEC Inspector General is appointed

by the SEC Chairman and reports both to the Chairman and the Congress. The Inspector

General is explicitly empowered by Section 6(a)(4) of the Inspector General Act to issue

subpoenas requiring the production of documentary evidence necessary in the performance of

the functions assigned by the Act. See id. § 6(a)(4).

3.     As Counsel to the Inspector General and Associate Inspector General for

Investigations, I am responsible for overseeing the Office's internal investigative program. I

personally conduct some of the OIG's investigations, typically those of a serious or complex

nature. I also review and approve the work of the other OIG attorneys who conduct

investigations. I report directly to the Inspector General. The Inspector General has delegated to

me the authority to issue subpoenas under Section 6(a)(4) of the Inspector General Act.


**The OIG's Investigation into Gary J. Aguirre's Allegations**

4.     Pursuant to Sections 4(a) and 7(a) of the Inspector General Act, the OIG is

conducting an internal investigation into allegations of misconduct by SEC managers made by

former SEC enforcement attorney Gary J. Aguirre ("Mr. Aguirre"). Mr. Aguirre initially made

allegations of misconduct by SEC managers in letters to SEC Chairman Christopher Cox, dated

September 2, 2005 and October 11, 2005. These included allegations that managers in the

Division of Enforcement ("Enforcement") gave a potential insider trading tipper preferential

treatment because of his political connections, terminated Mr. Aguirre for complaining about the

alleged preferential treatment, and retroactively created a supplemental negative evaluation to

justify his termination.

-2-

5.    The OIG initially opened an investigation into Mr. Aguirre's allegations on

October 6, 2005. Kelly J. Andrews, Associate Counsel to the Inspector General, conducted the

OIG's initial investigation. After conducting interviews of Enforcement managers and other

SEC staff and reviewing relevant documents, Ms. Andrews found insufficient evidence to

support Mr. Aguirre's allegations and recommended that the investigation be closed. Ms.

Andrews determined, in consultation with the Inspector General and me, that she did not need

additional information from Mr. Aguirre to complete the investigation because his letters

contained specific allegations of wrongdoing. I reviewed and concurred with Ms. Andrew's

recommendation to close the investigation, and the Inspector General approved closing the

investigation. The decision to close the initial investigation was documented in a closing

memorandum to the file, dated November 29, 2005.

6.    Beginning in May 2006, Congressional Committees began to express interest in

Mr. Aguirre's allegations. On May 12, 2006, Senator Charles E. Grassley, Chairman of the

Senate Committee on Finance, sent a letter to the SEC Inspector General requesting a briefing as

soon as possible regarding the OIG's investigation into Mr. Aguirre's allegations. Senator

Grassley also asked for copies of any related investigative reports or closing memoranda.

7.    The Inspector General, Ms. Andrews, and I met with Senate Finance Committee

staff on May 22, 2006, and briefed them on portions of the OIG investigation of Mr. Aguirre's

allegations. On June 15, 2006, Ms. Andrews and I met again with the Senate Finance

Committee staff and made available a copy of the OIG's November 29, 2005 closing

memorandum for their review. Ms. Andrews and I also answered the staff's questions about that

document and the OIG's investigation. During the May 22, 2006 and June 15, 2006 meetings,

Committee staff alleged that the initial OIG investigation was incomplete and inadequate

-3-

because the OIG did not interview Mr. Aguirre and did not obtain certain critical e-mails and other evidence. Also during these meetings, Committee staff raised some allegations pertinent to Mr. Aguirre that were new to the OIG.

8.      Beginning on June 23, 2006, the New York Times began reporting on Mr. Aguirre's allegations, the OIG's investigation into those allegations, and related Congressional inquiries. A June 23, 2006 New York Times article reported that Mr. Aguirre had provided a 42-page sworn statement outlining his allegations, with 46 supporting exhibits, to a lawyer for the Senate Banking Committee, which was working with the Senate Finance Committee on its investigation into Mr. Aguirre's firing. On June 28, 2006, the New York Times reported that Congressional investigators wanted to know why the OIG had not interviewed Mr. Aguirre before reaching a conclusion.

9.      Also on June 28, 2006, Mr. Aguirre testified publicly before the Senate Committee on the Judiciary. During his testimony, Mr. Aguirre talked about the alleged preferential treatment of the potential insider trading tipper with powerful political connections and Mr. Aguirre's allegedly unlawful termination. Mr. Aguirre also made some additional allegations, including that Enforcement's insider trading investigation was stopped for political reasons. Mr. Aguirre confirmed in his testimony that he had provided a 42-page sworn statement with 46 exhibits to the Senate Banking and Finance Committees and to the Office of Special Counsel ("OSC").

10.     On July 6, 2006, SEC Chairman Christopher Cox requested that the Inspector General reopen its investigation and re-examine all of Mr. Aguirre's allegations and, if possible, interview Mr. Aguirre. In making this request, Chairman Cox noted that Mr. Aguirre had

-4-

recently made public allegations and had enlarged the scope of his original allegations to include a charge that the OIG's initial investigation was inadequate.

11.    In consideration of Chairman Cox's request and the new information acquired since closing the initial investigation, the Inspector General decided on July 6, 2006, that the OIG would reopen its investigation of Mr. Aguirre's allegations. The Inspector General asked Ms. Andrews and me to conduct the investigation jointly. He directed us to re-examine the allegations Ms. Andrews had previously investigated and to review any new charges made since the first investigation was closed. The Inspector General also instructed Ms. Andrews and me to prepare a detailed investigative plan and to be as thorough as possible in conducting the reopened investigation.

12.    The OIG is conducting this investigation pursuant to Sections 4(a) and 7(a) of the Inspector General Act in a good-faith effort to inquire into the allegations made by Mr. Aguirre.

**Efforts to Obtain Documents from Senate Committees and Office of Special Counsel**

13.    On July 19, 2006, Ms. Andrews and I spoke over the telephone with Emilia DiSanto, Jason Foster and Nicholas Podsiadly, staff of the Senate Finance Committee. We informed them that we had reopened our investigation into Mr. Aguirre's allegations and requested that they provide us with relevant documents in the Committee's possession, including Mr. Aguirre's 42-page sworn statement with 46 exhibits. On July 20, 2006, Ms. Andrews and I spoke with Harold Kim and Hannibal Kemerer, staff of the Senate Judiciary Committee, and made a similar request for documents. On July 20, 2006, I telephoned Mark Osterle of the Senate Banking Committee and left a voicemail message for him to call me. Mr. Osterle did not return my call.

14.    After Ms. Andrews and I made our verbal document requests, the Senate Finance and Judiciary Committee staff asked for written document requests. On July 20, 2006, the Inspector General provided a written document request to Senator Charles E. Grassley, Chairman of the Senate Finance Committee. On July 21, 2006, the Inspector General provided a similar written document request to Senator Arlen Specter, Chairman of the Senate Judiciary Committee. The Senate Finance Committee staff provided me with a website link to one publicly available document (an 18-page letter dated May 30, 2006, from Mr. Aguirre to Senators Chuck Hagel and Christopher Dodd of the Senate Banking Committee). Otherwise, the Committees provided no documents in response to the Inspector General's document requests.

15.    On August 7, 2006, Ms. Andrews spoke with Frank Greenwell, a senior investigator for OSC. Ms. Andrews requested a copy of Mr. Aguirre's complaint to OSC, which I understand is the 42-page sworn statement with 46 exhibits that Mr. Aguirre has also provided to the Senate Committees. Mr. Greenwell informed Ms. Andrews that OSC could not release anything from its file.

### Efforts to Obtain Testimony and Documents Informally from Gary J. Aguirre

16.    On July 20, 2006, Ms. Andrews and I spoke over the telephone with Joanne Royce of the Government Accountability Project, 1612 K Street, N.W., Suite 1100, Washington, D.C. 20006, an attorney representing Mr. Aguirre. We informed Ms. Royce that the OIG had reopened its investigation into Mr. Aguirre's allegations of misconduct by SEC managers and requested that he testify and provide relevant documents. In response to Ms. Royce's questions about what documents we were requesting, we told her we wanted all relevant documents, but that a good starting place would be Mr. Aguirre's 42-page sworn statement with 46 exhibits.

-6-

Ms. Royce said she needed to check with another attorney representing Mr. Aguirre and would get back to us at least by July 24, 2006. Ms. Royce did not contact Ms. Andrews or me by July 24, 2006. I left a voicemail message for Ms. Royce on July 27, 2006, asking her to call Ms. Andrews or me.

17.    Ms. Royce called Ms. Andrews and me on August 1, 2006. Ms. Royce informed us that Mr. Aguirre and she had some reservations about participating in the reopened OIG investigation and that she wanted to ask us some questions. Specifically, Ms. Royce asked, among other things, why Mr. Aguirre was not contacted in the initial investigation, why the OIG had reopened its investigation and whether the reopened investigation was looking at the same allegations as the initial investigation. I told Ms. Royce that I could not discuss our investigative techniques and methods with her. I did tell her that the Inspector General had made the decision to reopen the investigation, but that I could not discuss the reasons for that decision with her without first checking with the Inspector General. I further told Ms. Royce that the reopened investigation was looking at Mr. Aguirre's initial allegations, as well as additional related allegations that had come to our attention.

18.    During the August 1, 2006 telephone conversation, Ms. Royce also said she could not understand why we were asking Mr. Aguirre for documents when we presumably had access to all relevant SEC documents. I told Ms. Royce that we wanted to be thorough and complete in our investigation. I further told Ms. Royce that it would be very helpful if we could at least obtain Mr. Aguirre's 42-page statement and 46 exhibits.

19.    I telephoned Ms. Royce back on August 1, 2006, after speaking with the Inspector General. I left her a voicemail message, stating that I had spoken with the Inspector General and could provide no additional information in response to her questions. However, I assured her

that the Inspector General intended for a thorough, complete and objective investigation to be conducted. I requested that Ms. Royce let me know whether Mr. Aguirre would cooperate with our requests for testimony and documents.

20.    On August 3, 2006, Ms. Royce wrote to SEC General Counsel Brian Cartwright and copied Ms. Andrews and me. In her letter, Ms. Royce stated that she had addressed several questions to me in an effort to determine whether the OIG's investigation was a legitimate effort to obtain evidence about possible misconduct by senior SEC officials, or whether the OIG was "simply posturing." Ms. Royce then claimed that I declined to answer any of her questions. Ms. Royce also stated in her letter that she had no confidence in the OIG's ability to conduct a thorough investigation. She concluded by stating that Mr. Aguirre declined to be interviewed or to supply a copy of his OSC complaint.

### The Subpoena to Gary J. Aguirre

21.    Because our efforts to obtain Mr. Aguirre's documents on a voluntary basis were not successful, on August 11, 2006, I issued a subpoena <u>duces tecum</u> to Mr. Aguirre. The subpoena requested production, by August 31, 2006, of Mr. Aguirre's sworn statement and exhibits that he provided to the OSC and the Senate Banking Committee, and other documents relevant to his allegations of misconduct by SEC managers. The subpoena was properly served on Mr. Aguirre on August 14, 2006, at his residence in Washington, D.C.

22.    On August 21, 2006, Mr. Aguirre's counsel, Joanne Royce, telephoned Ms. Andrews and requested an extension of ten business days to respond to the subpoena. Ms. Royce told Ms. Andrews that the reason for the extension was that Mr. Aguirre was considering bringing on additional counsel to advise him regarding the subpoena. On August 23, 2006, Ms.

-8-

Andrews notified Ms. Royce by e-mail that the OIG was granting Mr. Aguirre's request for a ten business day extension.

23.    On September 15, 2006, Mr. Aguirre's counsel, Scott A. Hodes, Attorney at Law, P.O. Box 42002, Washington, D.C. 20015, and Joanne Royce sent a letter to me, responding to the subpoena to Mr. Aguirre. No documents were provided in response to the subpoena. Rather, Mr. Hodes and Ms. Royce asserted various objections to the subpoena. These included, among other things, that the OIG's investigation was not being conducted for a legitimate purpose, that many of the documents sought do not appear to be relevant to the OIG investigation, and that all documents in Mr. Aguirre's possession are currently in the SEC's possession.

**The Subpoena Was Issued for a Proper Purpose and Requests Relevant Documents**

24.    The purpose of the OIG's reopened investigation is to conduct a complete and thorough investigation into Mr. Aguirre's allegations of preferential treatment, unlawful termination and personnel file tampering by SEC managers, and other related allegations. The authority to conduct such an investigation is clearly provided by Sections 4(a) and 7(a) of the Inspector General Act. In order to perform a complete and thorough investigation of Mr. Aguirre's allegations, the OIG needs to know all of his specific allegations and what evidence he believes supports these allegations. On information and belief, this information is contained in Mr. Aguirre's 42-page sworn statement with 46 exhibits, as well as in other documents he may have provided to the Senate Committees and OSC. Obtaining this information is particularly critical in light of the allegations that the OIG's initial investigation was incomplete and did not uncover relevant documents and information, as well as Mr. Aguirre's refusal to provide testimony to the OIG.

-9-

25.    All of the documents requested to be produced in the subpoena are directly relevant to the OIG's investigation into Mr. Aguirre's allegations of misconduct by SEC managers. On information and belief, Mr. Aguirre's 42-page sworn statement with 46 exhibits details these allegations and the evidence he believes supports these allegations. On information and belief, the OSC and the Senate Judiciary and Finance Committees are all conducting investigations into these same allegations. Therefore, information provided by Mr. Aguirre to OSC and the Committees is directly relevant to the OIG's investigation.

**The OIG Does Not Already Possess All of the Subpoenaed Documents**

26.    As detailed above, the OIG has not been able to obtain a copy of Mr. Aguirre's 42-page sworn statement with 46 exhibits, and other relevant materials. On information and belief, no one at the SEC has been able to obtain a copy of Mr. Aguirre's sworn statement and exhibits. While it is possible that some of the 46 exhibits and other relevant documents in Mr. Aguirre's possession, such as e-mails, are in the possession of the SEC and/or the OIG, the OIG has no way to determine whether it has all the relevant information without obtaining Mr. Aguirre's documents.

27.    Additionally, the Senate Finance Committee staff informed the OIG that its initial investigation had not uncovered some important e-mails. During the reopened investigation, the OIG requested that the SEC's Office of Information Technology ("OIT") produce e-mails from the e-mail accounts of Mr. Aguirre and other SEC staff for the relevant time period. Although OIG received numerous e-mails, OIT informed me that, due to technical problems, the e-mail accounts of particular individuals for certain months, including Mr. Aguirre's e-mails for August 2005, could not be recovered.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _3_rd day of November, 2006.

*Mary Beth Sullivan*

Mary Beth Sullivan
Counsel to the Inspector General and Associate Inspector General for Investigation
Securities and Exchange Commission Office of Inspector General